Action by Benjamin Levitan against R. Thomas Short. From an order denying a motion to open a default judgment for plaintiff, defendant appeals. Reversed, judgment vacated, and new trial ordered.

Argued before GIEGERICH, DAYTON, and LEHMAN, JJ.

John F. Harrington, for appellant.

R. Dulany Whiting, for respondent.

PER CURIAM. Appeal from an order denying defendant's motion to open his default, and bringing up for review the judgment· taken by default.

The motion was promptly made upon an affidavit setting forth that defendant inadvertently· made a memorandum of the return day different from that stated in the summons, and further alleging a general release and an accepted order for a bond delivered to plaintiff in full settlement of the dispute between them, and further containing an affidavit of merits, and further stating his financial ability to respond to any judgment awarded herein against him. Accompanying this affidavit was defendant's proposed answer, setting up a good defense. No opposing affidavits were submitted, and the moving affidavits set forth all the essential facts entitling the defendant to the relief asked for, and the application should have been granted.

Order reversed, judgment vacated, and new trial ordered, with costs to the appellant to abide the event.

---

CITY OF NEW YORK v. NEW YORK MUT. GASLIGHT CO.

(Supreme Court, Appellate Division, First Department. December, 30, 1909.)

GAS (§ 7*)—FRANCHISE—RIGHTS IN STREETS—DURATION OF FRANCHISE.

　　Laws 1866, p. 1406, c. 651, creating a corporation with a perpetual franchise to manufacture and sell gas in a city, and providing that no street shall be dug into without the permission of the city authorities unless written consent thereto is given by a majority of the owners of the abutting property, and declaring that the corporation shall be subject as far as applicable to Laws 1848, p. 51, c. 37, section 18 of which provides that corporations to supply gas ·may lay pipes through the streets with the consent of the municipal authorities, etc., repeals section 18; and the franchise given is perpetual and complete and requires no secondary franchise from the city to make it effective, and the provision as to permission to lay pipes in the streets is an administrative consent to a particular place, and a permission given by the city to lay pipes in streets for a specified time is ineffective as a limitation on the power given by the Legislature, and, when the permission has been acted on, there is no right to order a removal of the pipes after the expiration of the specified time.

　　[Ed. Note.—For other cases, see Gas, Dec. Dig. § 7.*]

Appeal from Special Term, New York County.

Action by the City of New York against the New York Mutual Gaslight Company. From an interlocutory judgment overruling a de-

murrer to the first separate defense in the amended answer, plaintiff appeals.   Affirmed.

Argued before INGRAHAM, CLARKE, HOUGHTON, McLAUGHLIN, and SCOTT, JJ.

Francis K. Pendleton, Corp. Counsel (Theodore Connoly, of counsel, and Terence Farley and Frank B. Pierce, on the brief), for appellant.

George Zabriskie (Joseph P. Cotton, Jr., on the brief), for respondent.

CLARKE, J.   The complaint alleges: That the defendant is a gas corporation formed by chapter 651, p. 1406, Laws 1866, which provided among other things that:

"The said corporation shall have full power and authority to manufacture, make and sell gas * * * and to light any part of the city of New York, except such parts as any person, persons or corporations may now hold and possess the exclusive right to light, and the streets, buildings, manufacturies in such places not so excepted. * * * Provided that no public street or highway in the city of New York shall be dug into, injured or defaced, without the permission of the municipal authority thereof first had and obtained; provided that such permission of the municipal authorities shall not be required if the majority of the owners in interest, of the property immediately adjoining the part of the street or highway so dug out, injured or defaced, shall give their consent thereto in writing."

That the board of aldermen duly adopted April 27, 1868, and the mayor approved April 30, 1868, a resolution providing that:

"Permission be, and the same is hereby given to the New York Mutual Gaslight Company of the city of New York to lay pipes for conducting gas through the streets, avenues, lanes, alleys and squares in the said city, for the period of thirty years, to be subject to the same restrictions as to the mode of laying down of said conductors as apply to and govern the New York and Manhattan Gaslight Companies in that respect."

That, acting pursuant to said resolution, the defendant thereafter dug into and opened the streets, avenues, lanes, alleys, and squares and laid pipes or conductors therein for gas, and has ever since conducted gas through said pipes and through other pipes, mains, and conductors which have been from time to time laid by defendant in the streets and other public places of the city of New York.   On information and belief, that defendant did not obtain the consent in writing of the majority of the owners in interest of the property immediately adjoining the part of the streets or highways so dug into, and in which pipes were laid, as aforesaid, but that defendant acted solely by virtue and authority of said resolution of the board of aldermen. That, by reason of the matters aforesaid, whatever right the defendant may have had to dig into and open the streets and other public places and to lay pipes therein and to maintain pipes, mains, and conductors in said streets and to conduct gas through the same became lost to it and expired April 30, 1898, and since said time defendant has without any legal authority whatever dug into, injured, and defaced the said streets and avenues and other public places, and has laid, maintained, and operated pipes, mains, and conductors in said places and supplied gas through the same without the permission of

the municipal authority and without the consent of the majority own-ers of the property immediately adjoining. That the said acts and the maintenance of pipes, mains, and conductors in said places consti-tute a continuing trespass, a nuisance and invasion of public right, and the said pipes and mains are an encroachment and an obstruction in the public highways, all of which has been and is to the great dam-age of plaintiff, for which it has no adequate remedy at law. That, before the commencement of this action, plaintiff duly notified the de-fendant of the expiration and revocation of each and every grant, li-cense, and permission to it by which it claimed the right or authority to open and dig into the streets and other public places of the said city and notified it to forthwith cease opening and maintaining, and to remove all pipes, mains, and other obstructions and encroachments from such places which the defendant refused and still refuses to do, and it demanded relief (1) by a permanent injunction commanding the defendant, its officers, and servants to absolutely desist and refrain from further excavation and from further operating or maintaining pipes, mains, or other obstructions in the streets, and to remove all such pipes, mains, and other encroachments in the highway at all con-venient speed; (2) or, in the alternative, that the defendant be com-pelled to apply for and obtain a new franchise or permission from the plaintiff for the right to lay, maintain, and operate pipes and con-ductors in the streets and to conduct gas through the same; (3) that an accounting be directed to ascertain the amount of damages plain-tiff has sustained by reason of the unlawful use and occupation by the defendant of the streets as aforesaid, and that plaintiff have a judgment therefor.

For its first separate and complete defense the defendant alleges that since the year 1866, pursuant to and relying on chapter 651 of the terms of 1866, and the various other laws amendatory thereof, and the resolution of the board of aldermen referred to in the complaint, and relying on the consents of the property owners to such action here-inafter referred to, and on consents given to it by the municipal au-thority of said city authorized therefor, as hereinafter set forth, it has dug into and made certain openings in the streets and highways of said city and carried on its business of manufacturing and selling gas, and in such work has expended already many millions of dol-lars; that since the formation of the company its operations have been carried on uninterruptedly since 1870 to the present time for a period of almost 40 years without hindrance or objection from the plaintiff for the state of New York, or from any other person or pub-lic authority, and without objection of any kind from the public, but, on the contrary, with the express consent of said consumers and prop-erty owners (in writing and otherwise) and duly constituted authori-ties of the city and state of New York in that regard; that the con-sent of the municipal authority, granting to defendant the right to dig into the city streets, has been in various forms in addition to the form alleged in paragraph four of the complaint. Defendant has obtained consents of the president of the borough of Manhattan which have been substantially in the form annexed marked "Exhibit B"; con-sents of the department of public lightings, building, and supplies in

substantially the form annexed, and marked "Exhibit C"; consents from the department of highways in substantially the form annexed, marked "Exhibit D"; and it has also obtained consents in substantially the same form from the department of public works and from the Croton aqueduct. The defendant alleges that it has not dug into, injured, or defaced any street or highway of the city of New York without the consent in one or other of the forms heretofore alleged of some one of the municipal authorities duly authorized by law in respect thereto. Defendant further alleges that it has, in accordance with chapter 651, Laws 1866, obtained the consents of the majority of the owners in interest of the property immediately adjoining the parts of all streets and highways in said city dug into, injured, or defaced by the defendant, and such consents have been given as follows: Before the company has made service connection or supplied gas to any premises in any street, it has required of and received from the occupant or owner of the premises to which gas was to be so supplied an application in writing for a supply of illuminating gas. The written forms of such application and consents to dig into streets are substantially the form marked "Exhibit E," hereto annexed.

The exhibit referred to is an application to the company and reads as follows:

"The subscriber being the occupant or owner of the premises No. ———— New York, occupied as a floor or store ———— requests the New York Mutual Gaslight Company to supply (her) (him) or (them) with illuminating gas on said premises."

With further provisions in regard to meters and deposits, but with no reference whatever to digging into the streets or occupation thereof.

The answer proceeds the defendant alleges on information and belief that such consents in writing so filed with it have been in each case signed by the owners of the property thereby affected or by the occupants of such property, and defendant alleges on information and belief that where such consents are signed by occupants, who are not owners, such occupants were the duly constituted agents of such owners of such property for the purposes of such application and consent. Defendant further alleges that the majority of the owners in interest of the property immediately adjoining the parts of the streets and highways dug into, injured, or defaced by it at any time during its operations have given their consent to such digging, defacement, or injury, and have waived the requirement of chapter 651, Laws 1866, above referred to, that such consent should be in writing.

To this separate and complete defense the city demurred on the ground that it was insufficient in law upon the face thereof, and, said demurrer having been overruled, appeals.

Chapter 37, p. 48, Laws 1848, authorizing the formation of gaslight companies, provided in section 18 thereof that:

"Any corporation formed under this act shall have full power to manufacture and sell, and to furnish such quantities of gas as may be required in the city, town or village where the same shall be located for lighting the streets and public and private buildings, or for other purposes; and such corporations shall have power to lay conductors for conducting gas through the

streets, lanes, alleys and squares in such city, village or town, with the consent of the municipal authorities of said city, village or town, and under such reasonable regulations as they may prescribe."

In considering the legal effect of the consent which the municipal authorities are authorized to give by this provision of law, as re-enacted in section 61 of the transportation corporations act, the Court of Appeals said in Ghee v. Northern Union Gas Co., 158 N. Y. 510, 53 N. E. 692:

"It operates to create a franchise by which is vested in the corporation receiving it a perpetual and indefeasible interest in the land constituting the streets of a municipality. It is true that the franchise comes from the state, but the act of the local authorities who represent the state by its permission and for that purpose constitutes the act upon which the law operates to create the franchise. The state might grant the franchise directly to the corporation without the consent of the local authorities, and has done so in many instances; but the tendency of later years, which is well grounded in reason, is for the state to confer upon the local municipal authorities the right to represent it in the matter of granting franchises to the extent that the final act is necessary to the creation of franchises must be exercised by such authorities. The legal effect of the consent, therefore, is the same as if the local authorities in form granted the franchise and the interest in the land. * * * We have had no difficulty in reaching the conclusion that the consent that is necessary to confer a franchise upon the gaslighting corporation can be given only by the municipal assembly through appropriate ordinances, but that when the consent has been granted to a corporation duly created, by which a corporate franchise, which is property, has been acquired, the administrative officers must be applied to for a permit that will allow the corporation to exercise such rights in order that the public convenience may be subserved. The permission forms no part of the franchise and is not essential to its existence, and, if refused, the granting of it may be compelled by mandamus, as indeed it has been in a number of cases, but the officers to whom the application must be made may within reasonable limits fix the time when work on the streets may be begun, determine what portion of a street shall be first opened, how much of it may be left open at a time, the depth of the trench, and other details, the careful regulation of which is of first importance to a metropolitan city like New York."

But the defendant corporation was not incorporated under the general act of 1848, but by special charter under the act of 1866, which provided that certain persons named therein "and their associates and successors are hereby created a body politic and corporate, with perpetual succession under the name and style of the New York Mutual Gaslight Company, * * * and by the name and style aforesaid the said corporation shall have full power and authority to manufacture, make and sell gas * * * and to light any part of the city of New York, * * * provided that no public street or highway in the city of New York shall be dug into, injured or defaced without the permission of the municipal authorities first had and obtained; provided that such permission of the municipal authorities shall not be required if the majority of the owners of the street or highway so dug into, injured or defaced shall give their consent thereto in writing;" and section 5 of said act provides that:

"The said company shall be subject to all the provisions, duties and obligations contained in, and shall be entitled to all the benefits and privileges conferred by an act entitled, 'An Act to authorize the formation of Gas Light Companies' passed February 16, 1848, and the acts amendatory thereof and

additional thereto, except that all acts and parts of acts inconsistent with sections 1, 2, 3 and 4 of this act are hereby repealed and declared to be inoperative so far as the same are applicable to this act."

We think that the proviso in the first section of the act, that no public street shall be dug into without the permission of the municipal authority, provided that such permission shall not be required if the majority of the owners in interest of the property immediately adjoining such street shall give their consent in writing, is inconsistent with that portion of section 18, c. 37, p. 51, Act 1848, which provides, "And such corporation shall have power to lay conductors for conducting gas through the streets, lanes, alleys and squares in such city, village or town with the consent of the municipal authorities of said city, village or town and under such reasonable regulations as they may prescribe;" and that, therefore, by section 5 of the act of 1866 said provision was repealed and declared to be inoperative so far as the same is applicable to this act; that, by the act of 1866, the franchise given by the state was perpetual and full and complete, and required no secondary franchise from the city by the consent of the legislative body to make it effective within the interpretation of the provisions of section 18 of the act of 1848, as declared in the Ghee Case, supra; further, that these provisions in regard to permission to dig, either by the municipal authority or by the majority of adjoining property owners, was the administrative consent to the particular place, time, or circumstances of such digging provided for in other provisions of law, under the cognizance and control of the administrative officers in charge of the streets, as also pointed out and decided by the same case. The corporation having a perpetual franchise from the state, subject to no limitations thereof by the local legislative body, the permission given by the resolution of the common council hereinbefore quoted, with its limitation of 30 years to lay pipes, was ineffective as a limitation upon the power given by the Legislature under the franchise granted to the defendant.

Even if the board of aldermen had power to limit its permission for 30 years, that limitation applied only to the right to lay pipes. Having been once granted and acted upon, no right was reserved affecting the continuance and maintenance of said pipes so laid under said permit, and certainly no right to order their discontinuance and removal. As the. state had given a perpetual franchise subject only to a condition subsequent or a permit to dig into the streets, when that permit had been granted and acted upon, the power to continue was a necessary incident of the franchise granted by the state, and not subject to interference or revocation by the local authority.

As the answer alleges the obtaining of the necessary "permission" "that it has not dug into, injured or defaced any street or highway * * * without the consent in one or other of the forms heretofore alleged of some one of the municipal authorities duly authorized by law in respect thereto," it is not insufficient in law, the demurrer was properly overruled, and the judgment should be affirmed, with costs and disbursements to the respondent.   All concur.